IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.A.R.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FRANK BISIGNANO, Commissioner | : | |
| of Social Security | : | NO. 25-3723 |

**MEMORANDUM AND ORDER**

CAROLINE GOLDNER CINQUANTO, U.S.M.J. September 29, 2026

Plaintiff filed this appeal from the Commissioner's decision denying his application for supplemental security income ("SSI"). For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and remand the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on April 2, 2024, alleging disability since his May 5, 2004 birthdate, as a result of autism spectrum disorder, language impairment, and intellectual impairment. Tr. at 42, 214.[2] His application was

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using his initials. See Standing Order – In re: Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Plaintiff characterized his third basis for disability as "supports needed." Tr. at 42, 214. Counsel clarified at the administrative hearing that Plaintiff is also disabled by an intellectual impairment, id. at 45-46, and Plaintiff testified, "I need a support system . . . due to my autism and intellectual disability." Id. at 51.

Although Plaintiff alleges disability from birth, a claimant is not eligible for SSI until the date he or she files an application for SSI benefits. 20 C.F.R. § 416.202(g); see

denied initially on June 12, 2024, id. at 84-90, and again upon reconsideration on July 25, 2024. Id. at 92-98. On August 9, 2024, Plaintiff requested an administrative hearing. Id. at 109. After holding a hearing on January 17, 2025, id. at 37-65, the ALJ issued an unfavorable decision on February 6, 2025. Id. at 17-29. The Appeals Council denied Plaintiff's request for review on May 21, 2025, id. at 1-6, making the ALJ's February 6, 2025 decision the final decision of the Commissioner. 20 C.F.R. § 416.1481.

Plaintiff sought review in federal court on July 21, 2025, Doc. 1, and the matter is now fully briefed. Docs. 10-12. The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 6.

## II. LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97,

---

also id. § 416.501 (claimant may not be paid for SSI for any time period that predates the date the application was filed). Therefore, the relevant period began in April 2024.

103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1. Whether the claimant is currently engaged in substantial gainful activity;
>
> 2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3. If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and
>
> 5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 416.920(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III. DISCUSSION

### A. ALJ's Findings and Plaintiff's Claims

In his February 6, 2025 decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since April 2, 2024, the application date. Tr. at 20. At step two, the ALJ found that Plaintiff had the following severe impairments: borderline intellectual functioning, major depressive disorder ("MDD"), anxiety disorder, developmental delay, and autism. Id. At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Id. The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels but is limited to simple, repetitive, routine tasks; cannot work at production rate pace; may have occasional interaction with the public and supervisors; and is limited to a low-stress job defined as few workplace changes. Id. at 22. At the fourth step, the ALJ found that Plaintiff has no past relevant work. Id. at 27. Based on the Plaintiff's age, education, and RFC, a vocational expert ("VE") testified that Plaintiff could perform the jobs of product sorter, machine tender, and inspector hand packager. Id. at 28; see also id. at 62-63 (VE

testimony). Based on this testimony, the ALJ found that Plaintiff was not disabled. Id. at 29.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because (1) the ALJ failed to explain how Plaintiff could occasionally interact with the public and supervisors but have no limitations on interacting with co-workers, and (2) the ALJ improperly rejected an expert medical opinion. Doc. 10 at 3-12. Defendant responds that the ALJ's decision is supported by substantial evidence. Doc. 11 at 3-9.[3]

**B. Plaintiff's Claimed Limitations and Testimony at the Hearing**

Plaintiff was born on May 5, 2004, and was therefore 19 years of age at the time of his SSI application (April 2, 2024) and 20 when the ALJ issued his decision (February 6, 2025). Tr. at 84. He has a high school education, with speech therapy and an Individualized Education Program ("IEP") throughout his schooling. Id. at 51, 215. Plaintiff has no past relevant work. Id. at 27.

At the hearing, Plaintiff testified as follows. He has a language impairment and speech impediment that makes it difficult for him to make sentences, use grammar, and pronounce certain words. Tr. at 43-44. His autism, which was diagnosed a year before the hearing, makes it difficult for him to comprehend directions and complete tasks, and it influences his depression and anxiety. Id. at 44, 50. He gets "scared to do certain

[3]In his reply, Plaintiff merely asserts that Defendant failed to refute the errors he identified in his original brief. Doc. 12 at 1. Indeed, Defendant's responsive brief contains only three substantive paragraphs. Doc. 11 at 5-6 (addressing Claim 1) & 7-8 (addressing Claim 2).

things" due to anxiety, and his depression arises from worry about the future, his lack of independence, and his current situation, including being diagnosed with autism and having a case worker. Id. at 50. He experiences suicidal ideation when in a depressive mood. Id. at 50, 57. He has problems with his short-term and long-term memory, which affects his ability to maintain a schedule because he is forgetful. Id. at 55. He cannot concentrate or focus on a task, is not able to comprehend how to do a task unless he is taught how to do it, and has trouble with reading and understanding. Id. at 56. He needs a support system because of his autism and intellectual disability, and he cannot perform a job where he is told what to do or that involves guidance or help. Id. at 51. He experiences stress when he does not understand how to perform tasks, and he needs to ask for help "all the time." Id. at 57. His anxiety affects his ability to interact with others and the general public "most of the time." Id. at 58.

In a typical day, Plaintiff goes to bed after midnight, wakes up the next afternoon, and spends his days in bed on the Internet. Tr. at 52. He also takes naps daily. Id. at 53. He does not drive and has no friends. Id. at 52. He must be reminded to do chores, bathes once a week, needs reminders to take care of personal hygiene, and sometimes does not recognize the need to change clothes. Id. at 54. His mother is the primary schedule-keeper and she picks out clothes for his appointments. Id. at 55-56.[4]

[4]Plaintiff's testimony is consistent with a Function Report completed by Plaintiff's mother. Tr. at 221-28. For example, Plaintiff's mother indicated that Plaintiff has difficulty with personal hygiene and needs reminders, encouragement and help to do household chores. Id. at 222-23. She also indicated that Plaintiff has limitations in the ability to lift (due to low energy), talk, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. Id. at 225.

A VE also testified at the administrative hearing. Tr. at 62-64. Relevant to the decision, the ALJ asked the VE to consider someone of Plaintiff's age and education, who could perform the full range of exertional work and with the non-exertional limitations contained in the ALJ's RFC assessment, see supra at 4. Id. at 62. The VE testified that there were light, unskilled jobs that Plaintiff could perform, including product sorter, machine tender, and inspector hand packager. Id. at 62-63. The VE further testified that if the individual were off-task more than 15 percent of the day or unexpectedly missed up to three days per month, he would be unable to perform any work. Id. at 63-64.

**C. Medical Evidence**

Plaintiff's claims arise from the ALJ's consideration of certain expert medical opinions. Accordingly, this summary will focus on those opinions, with educational and medical treatment evidence included for context.

1. IEP and Medical Treatment

Plaintiff's impairments of borderline intellectual functioning and developmental delay arose during his childhood, and he began exhibiting autistic symptoms as a toddler. Tr. at 390.[5] The record includes a 12th grade IEP for Plaintiff covering the period from November 11, 2021, through May 27, 2022. Tr. at 311-63. The IEP indicates that Plaintiff's mother reported minimal behavioral concerns, while at-risk concerns included Plaintiff's difficulty with attention and with functional communication and social skills.

[5]As a toddler, Plaintiff was non-verbal and exhibited profuse hand shaking, head shaking, and sudden outbursts. Tr. at 390.

Id. at 322. The IEP listed Plaintiff's strengths as cooperative, polite, good attitude, enjoys drawing, and written expression, while education evaluations showed a "significant ability-achievement discrepancy" in reading fluency, mathematics calculation, and mathematics problem-solving. Id. at 323. The IEP provided for learning support, including lessons broken down into smaller segments and the opportunity to meet with teachers to have directions clarified. Id. at 313, 332.

Medical records for the period prior to 2024 consist of a single childhood wellness visit which occurred on October 22, 2021, with Tyler Schmutzler, M.D., of WellSpan Family Medicine ("WellSpan"). Id. at 297-307. Plaintiff's physical examination yielded normal results, and his depression screening indicated no concern within the prior two weeks. Id. at 299-300, 305. Plaintiff expressed an interest in going to college to study animation. Id. at 299.

On January 8, 2024, Community Services Group ("CSG") performed an evaluation of Plaintiff for possible autism, anxiety, depression, and aggressive behaviors. Tr. 402, 409. Plaintiff indicated that he experienced anxiety 3 days per week, with a goal of reducing it to one day per week with treatment, including therapy. Id. at 413. CSG diagnosed unspecified anxiety disorder, unspecified mood disorder, and autism spectrum disorder. Id. at 411-12. Fatima Sattar, CRNP ("CRNP Sattar"), recommended medication and follow-up compliance with treatment providers, psychological education, and cognitive behavioral therapy. Id. at 412-15.

On March 25, 2024, WellSpan personnel performed an initial clinical screen. Tr. at 435-45. Plaintiff described a history of problems with verbal communication and

comprehension, behavior, social interaction, and anxiety, and confirmed that he struggles with transitions between tasks. Id. at 437-39. WellSpan confirmed his diagnoses of autism, intellectual disability, and developmental disability. Id. at 442. On April 1, 2024, Kathleen Dissler, CRNP, performed a diagnostic evaluation for neurodevelopmental disorders, id. at 427-33, which indicated an "[e]xtreme level of autism-related symptoms." Id. at 432-33. On May 6, 2024, Plaintiff was diagnosed with autism spectrum disorder with accompanying language impairment. Id. at 422. The WellSpan provider recommended that Plaintiff continue outpatient therapy at CSG, targeting his anxiety and transition into young adulthood. Id. at 423.

On June 8, 2024, Plaintiff saw James Elia, M.D., of WellSpan. Tr. at 709-13. The doctor characterized Plaintiff's intellectual disability and autism spectrum disorder as stable but noted that his depression "appears to be deteriorating." Id. at 709. Plaintiff reported fluctuating moods and suicidal ideation in the prior week, and his mother reported that he "becomes very aggravated and agitated" when she tries to explain certain things to him. Id. at 710. Dr. Elia started Plaintiff on fluoxetine. Id. at 712.[6] On June 14, 2024, a WellSpan treatment provider emphasized to Plaintiff's mother the need to initiate Prozac. Id. at 705.

On June 20, 2024, Plaintiff underwent outpatient psychiatric treatment with CRNP Sattar of CPS. Tr. at 446-52. Plaintiff's mother stated that she did not start Plaintiff on fluoxetine because of warnings on the box regarding suicidal behaviors. Id. at 448.

---

[6]Fluoxetine (marketed as Prozac) is an anti-depressant. See https://www.drugs.com/fluoxetine.html (last visited Sep. 15, 2026).

CRNP Sattar performed a mental status exam ("MSE"), finding normal motor activity, speech, thought processes, and perceptions; fair insight and judgment; depressed mood; flat affect; and passive suicidal ideation. Id. at 450-51. CRNP Sattar directed Plaintiff to start taking fluoxetine. Id. at 450.

On September 11, 2024, after a fight with his mother in which Plaintiff threatened suicide, he was involuntarily committed to Lancaster Behavioral Health Hospital ("LBHH") due to increased anxiety, depression, and suicidal ideation, with reports of decreased activities of daily living, anhedonia,[7] hopelessness, helplessness, poor sleep, and impulsivity. Tr. at 525; see also id. at 564 (Plaintiff's suicidal ideation occurred "almost daily" and increased during the last 2-3 weeks). An initial mental health assessment found Plaintiff to be cooperative and alert, with focused concentration, fair judgment, poor insight, disheveled appearance, calm/flat/guarded mood, and flat affect, and a second assessment yielded identical findings except for fair insight and a calm/flat/sad mood. Id. at 553. Plaintiff received acute inpatient care and his medication was changed from fluoxetine to Lexapro and Abilify. Id. at 582, 702.[8] LBHH staff checked Plaintiff's status approximately every 15 minutes until his discharge on September 26, 2024. Id. at 649-79.

---

[7]Anhedonia is a total loss of feeling of pleasure in acts that normally give pleasure. Dorland's Illustrated Medical Dictionary, 33rd ed. (2020), at 90.

[8]Lexapro (generic escitalopram) is used to treat certain types of depression and anxiety. See https://www.drugs.com/lexapro.html. Abilify (generic aripiprazole) is an anti-psychotic medication used to treat, among other things, MDD and autistic disorder. See https://www.drugs.com/abilify.html. (last visited Sep. 15, 2026).

On October 10, 2024, Plaintiff followed up at WellSpan with Patrick M. Anstett, D.O. Tr. at 701-04. Dr. Anstett noted that Plaintiff experienced greater aggression and agitation since discharge from LBHH, and that he had stopped taking his medications because, as his mother explained, Plaintiff seemed "high" while on Lexapro and Abilify in the hospital. Id. at 702. The doctor advised Plaintiff to resume his medications, which could then be adjusted accordingly. Id.

On November 20, 2024, Wayne David Schmoyer, Ph.D., completed a psychological report on referral from Lancaster County Behavioral Health and Developmental Services. Tr. at 716-18. Dr. Schmoyer observed that Plaintiff appeared clean and casual, courteous, engaged, and fully oriented, with fair eye contact, and that he "appeared to be motivated to try his best during the assessment." Id. at 716. The doctor performed intelligence testing that placed Plaintiff "in the range between Borderline Intelligence and an intellectual disability." Id. at 717. Plaintiff scored below the first percentile in all three domains of adaptive behavior – communication, daily living skills, and socialization. Id. at 717. In view of Plaintiff's special education throughout school, delayed developmental milestones, and "significantly suppressed adaptive skill scores," Dr. Schmoyer opined that Plaintiff functions in the range of a mild intellectual disability. Id. at 718.

On December 12, 2024, Dr. Elia completed a mental medical source statement. Tr. at 738-42. The doctor indicated that he treated Plaintiff on two occasions with diagnoses of intellectual disability, developmental disability, anger management, and autism, and that he referred Plaintiff to psychiatry. Id. at 738. Plaintiff presented with

depressed mood and circumstances of past and current life stressors. Id. Dr. Elia identified Plaintiff's signs and symptoms as decreased energy; thoughts of suicide; blunt, flat, or inappropriate affect; feelings of guilt or worthlessness; mood disturbance; difficulty thinking or concentrating; persistent disturbances of mood or affect; apprehensive expectation; seclusiveness or autistic thinking; emotional withdrawal or isolation; bipolar syndrome; emotional lability; and sleep disturbance. Id. at 739. Dr. Elia assessed Plaintiff as having significant limitations in the abilities to remember work-like procedures, understand and remember detailed instructions, carry out detailed instructions, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, travel to unfamiliar places or use public transportation, deal with normal work stress, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. Id. at 740-41.[9] The doctor explained that his assessment was based on Plaintiff's history of autism, and that Plaintiff's mood disorder creates challenges in his ability to socialize with others. Id. at 741. Lastly, Dr. Elia opined that

[9]Dr. Elia's assessment of these limitations is not a paragon of clarity. For example, for each of the abilities listed above, the doctor checked the box labeled "Category III," which the form defines as "Precludes performance from 11% to 20% of an 8-hour workday." Tr. at 740. However, Dr. Elia used a V-shaped bracket to enclose the definitions of Categories II and IV, and circled "Category IV," which the form defines as "Precludes performance for more than 20% of an 8-hour workday." Id. Thus, it is unclear whether the doctor intended to indicate that Plaintiff's abilities in the identified categories were precluded up to 20%, or more than 20%, of an 8-hour workday.

Plaintiff would be off task 30% of the time during an 8-hour workday, 5 days per week, and that his impairments and treatment would cause him to be absent from work about 3 days per month. Id. at 741-42.

2. Consultants and State Agency Physicians

On February 21, 2023, John Kajic, Psy.D., completed a mental status and intelligence evaluation. Tr. at 367-72.[10] Dr. Kajic noted that Plaintiff did not drive, had never worked, had never been hospitalized, and did not take any medications. Id. at 367-68. The doctor further noted that Plaintiff bathes and changes clothes once per week, does not socialize with anyone, and has minimal self-direction. Id. at 371. Plaintiff's reported depressive and anxiety-related symptoms included irritability and concentration difficulties. Id. at 368. On MSE, Plaintiff appeared cooperative and his overall presentation was "adequate," with appropriate dress and satisfactory hygiene and grooming. Id. He appeared fully oriented, with coherent and goal-directed thought processes, appropriate affect, and fair judgment and insight. Id. at 369. Dr. Kajic noted that Plaintiff's attention and concentration was mildly impaired due to learning disability in math, his recent and remote memory skills were intact, and he had borderline intellectual functioning. Id. The doctor diagnosed Plaintiff with an unspecified neurodevelopmental disorder and a learning disability in math. Id. at 372. In a medical

[10]Dr. Kajic's evaluation predates Plaintiff's application date and the administrative record index states that it, along with certain other expert opinions, originated from a prior application for benefits. See Court Transcript Index at 1F, 3F & 4F ("Prior Folder Medical Evidence"). Nevertheless, the assessments occurred close in time to Plaintiff's application date and were considered by the ALJ in his opinion regarding the present SSI application.

source statement of Plaintiff's ability to do work-related activities (mental), Dr Kajic opined that Plaintiff had no limitation in his abilities to understand, remember, or carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, coworkers, and supervisors; and respond appropriately to usual work situations and to changes in a routine work setting. Id. at 373-74. Plaintiff had mild limitation in his abilities to understand, remember, or carry out complex instructions, and to make judgments on complex work-related decisions. Id.

On March 14, 2023, Melissa Lynn Franks, Psy.D., a State agency psychological consultant, completed a childhood disability evaluation and a psychiatric review technique. Tr. at 67-73.[11] Most pertinent, Dr. Franks found that Plaintiff has a mild limitation pertaining to understanding, remembering, or applying information; interacting with others; concentration, persistence, and pace; and adapting or managing oneself. Id. at 70.

On June 20, 2023, Stacy Trogner, Psy.D., completed an MSE. Tr. at 382-86. Plaintiff reported a history of irritability and difficulty with concentration and comprehension, his mother noted that he talks to himself at times, and he stated that his autism causes him to prefer to be by himself or with family members. Id. at 383. Upon examination, Plaintiff was cooperative and his manner of relating overall with others was fair, with some unusual facial grimaces. Id. at 384. He exhibited satisfactory grooming,

[11]As the ALJ pointed out, see tr. at 25, the childhood disability standard and childhood domains of functioning utilized by Dr. Franks are not applicable to the present application.

intelligible speech, adequate expressive and receptive language, coherent and goal-directed thought processes, restricted affect, mildly impaired attention and concentration, mildly impaired recent and remote memory, below average cognitive functioning, and fair insight and judgment. Id. at 384-85. Dr. Trogner also completed a medical source statement of Plaintiff's ability to do work-related activities (mental). Id. at 387-89. The doctor opined that Plaintiff has no limitations pertaining to understanding, remembering, or carrying out simple instructions; a mild limitation pertaining to the ability to make judgments on simple work related decisions; and a moderate limitation pertaining to understanding, remembering, or carrying out complex instructions and the ability to make judgments on complex work related decisions; interact appropriately with the public, coworkers, and supervisors; and respond appropriately to usual work situations and to changes in a routine work setting. Id.

At the initial consideration stage on June 11, 2024, Richard Fredric Small, Ph.D., reviewed the evidence and opined that Plaintiff has a mild limitation in his ability to understand, remember, or apply information, and a moderate limitation in the ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Id. at 86. Dr. Small found Plaintiff to be moderately impaired in the abilities to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; interact with the general public; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. Id. at 87-88. Dr. Small concluded that Plaintiff could understand, retain and follow simple job instructions, id. at 88, and that he

was not disabled. Id. at 89. At the reconsideration stage on July 23, 2024, Amy Camodeca, Ph.D., agreed with Dr. Small's findings and conclusions. Tr. at 94-98.

**D. Claims**

1. Interaction with Co-workers

Plaintiff first argues that the ALJ failed to explain how Plaintiff could occasionally interact with the public and supervisors but have no limitations on interacting with co-workers. Doc. 10 at 3-6. Defendant counters that the ALJ's RFC determination is supported by substantial evidence. Doc. 11 at 5-6.

The RFC is the most a claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). In determining the claimant's RFC,

> the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

Pellegrini v. Kijakazi, Civ. No. 22-652, 2023 WL 5751403, at *8 (E.D. Pa. Sept. 6, 2023) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000)).

As previously noted, here the ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except that he is limited to simple, repetitive, routine tasks; cannot work at production rate pace; **may have occasional interaction with the public and supervisors**; and is limited to a low-stress job defined as few workplace changes. Tr. at 22 (emphasis added). Importantly, the ALJ did not find any limitation in Plaintiff's ability to interact with coworkers. Id.

As an initial matter, Plaintiff is incorrect in stating that the ALJ failed to explain how Plaintiff could occasionally interact with the public and supervisors but had no limitation on interacting with co-workers. Rather, as Plaintiff acknowledges, see Doc. 10 at 5, the ALJ addressed Plaintiff's ability to interact with co-workers when addressing Dr. Trogner's expert opinion:

> Dr. Trogner's opinion is generally consistent with [Plaintiff's] medical records on a longitudinal basis, including clinical examination findings of cooperative behavior, normal motor activity, a normal thought process, normal perceptions, alert sensorium, normal speech, cooperative behavior, focused concentration, a calm mood, normal speech, and normal behavior and notations indicating [Plaintiff] was noted to have a normal appearance and [Plaintiff] denied experiencing any memory impairment; [Plaintiff] was noted to be easily understood; [Plaintiff's] grooming and attire were noted to be clean and casual; and [Plaintiff] was noted to be oriented to person, place, time, and situation. However[,] the aspect of [Dr.] Trogner's opinion pertaining to interacting with coworkers is not consistent with documented clinical examination findings of cooperative behavior and normal behavior. Thus, while the undersigned generally finds Dr. Trogner's opinion persuasive, the undersigned does not find persuasive the aspect of [Dr.] Trogner's opinion pertaining to interacting with coworkers.

Tr. at 26. Thus, the problem regarding the ALJ's consideration of a limitation regarding coworkers is not one of omission, as Plaintiff's caption suggests, but of sufficiency.

To the extent Plaintiff argues that the ALJ's opinion in this regard is insufficient, see Doc. 10 at 5-6, I agree. First, the ALJ's finding of no limitation in interacting with coworkers is problematic given Dr. Trogner's overall assessment of Plaintiff, which the ALJ otherwise found to be persuasive. For example, Dr. Trogner opined that Plaintiff had a mild limitation in the ability to make judgments on simple work-related decisions,

and moderate limitations in understanding, remembering, or carrying out complex instructions and the ability to make judgments on complex work related decisions; interact appropriately with the public, coworkers, and supervisors; and respond appropriately to usual work situations and to changes in a routine work setting. Tr. at 387-89. Notably, Dr. Trogner found these limitations despite also noting Plaintiff's "normal" appearance and demeanor in the evaluation setting. Thus, it is unclear how the ALJ concluded that "clinical examination findings of cooperative behavior and normal behavior" nullified Dr. Trogner's opinion regarding Plaintiff's limitations in interacting with coworkers but not with supervisors and the public.

Second, the ALJ does not explain how one's appearance and demeanor at a medical appointment can predict one's ability to interact with co-workers on a sustained basis. The work setting is manifestly different from home or a mental health clinic, and therefore it is improper for an ALJ to substitute a medical opinion about a claimant's ability to function in the workplace with "an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting." Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000); see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 356 (3d Cir. 2008) (ALJ improperly relied upon doctor's observation of the claimant's "good focus, good attention, and good concentration" given the distinction between treatment notes and the doctor's ultimate opinion on the ability to work) (citing Morales, 225 F.3d at 219); Bazewicz v. Kijakazi, Civ. No. 21-504, 2022 WL 4357480, at *7 (M.D. Pa. Sept. 20, 2022) ("Evidence of a plaintiff's behavior and abilities at home or during medical appointments is considered

poor evidence of a plaintiff's abilities and behaviors under the stress of the workplace."). Moreover, "[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability." Morales, 225 F.3d at 319.

Third, the ALJ's finding in this regard is inconsistent with the record as a whole. For example, Dr. Trogner's opinion that Plaintiff is limited in his ability to interact with coworkers, supervisors, and the public is consistent with the opinion of Dr. Elia, who found Plaintiff limited in his ability to remember work-like procedures, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress, among other things, and who noted that Plaintiff's mood disorder creates challenges in his ability to socialize with others. Id. at 740-41 (Dr. Elia's medical source statement). State agency psychological consultants found Plaintiff to be limited in his ability to interact with others – a category which would presumably include co-workers. See id. at 70 (Dr. Franks, mild limitation), 86 (Dr. Small, moderate limitation), 94 (Dr. Camodeca, moderate limitation). Additionally, Plaintiff testified that he has difficulty with others, bathes and changes clothes infrequently, and needs regular help to perform tasks, id. at 51, 54, 56-58, all of which strongly suggests that he would have problems interacting with co-workers. Finally, the ALJ acknowledged treatment records indicating that Plaintiff's work attempts failed because he felt overwhelmed with instructions and with people trying to show him how to do the work. Id. at 51 (citing id. at 397).

Given this record evidence of Plaintiff's difficulty interacting with others, there is a logical disconnect in the ALJ's finding that Plaintiff was limited in his ability to interact with supervisors and the public but not with coworkers. See, e.g., Bangert v. O'Malley, Civ. No. 22-1476, 2024 WL 5008836, at *9 (D. Del. Dec. 6, 2024) ("[T]he ALJ does not address how an individual who is not capable of any social interaction with the public while at work can, nonetheless, frequently interact with others so long as they are supervisors or co-employees."); S.B. v. Comm'r of Soc. Sec., Civ. No. 20-14192, 2022 WL 16701880, at *3 (D.N.J. Feb. 15, 2022) (remanded where the ALJ assessed moderate limitation in ability to interact with others but crafted an RFC in which Plaintiff could maintain frequent contact with supervisors and coworkers after a 30-day training period). Moreover, it defies common sense to suggest that an individual with Plaintiff's array of impairments, who is limited in the ability to interact with supervisors and the public, would nevertheless have no limitation in his ability to interact with co-workers such that he could sustain employment. This issue warrants further explanation given the possibility that a limitation in interacting with co-workers may preclude the performance of the jobs identified by the VE, or be entirely work-preclusive.

In sum, I find this aspect of the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall obtain additional expert opinion regarding Plaintiff's ability to interact with co-workers on a consistent and sustained basis and, if necessary, additional vocational testimony.

2. Consideration of Expert Opinion Evidence

Plaintiff also argues that the ALJ failed to provide sufficient rationale for rejecting Dr. Elia's opinion. Doc. 10 at 6-11. Defendant responds that the ALJ complied with the regulations governing the consideration of opinion evidence. Doc. 11 at 6-8.

The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 416.920c(a). The regulations list the factors to be utilized in considering medical opinions: supportability, consistency, treatment relationship (including the length and purpose of the treatment and frequency of examinations), specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program. Id. § 416.920c(c). The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others. Id. § 416.920c(b)(2). The regulations explain that supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." Id. § 416.920c(c)(1). In addition, consistency means "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be." Id. § 416.920c(c)(2).

As previously noted, Dr. Elia found that Plaintiff would be off-task 30% of the time during an 8-hour workday, 5 days per week, and the ALJ found the doctor's opinion to be non-persuasive because it was not consistent with Plaintiff's normal MSE findings. Tr. at 27. Plaintiff argues that the ALJ improperly rejected Dr. Elia's opinion by referencing the "medical records on a longitudinal basis," without citing to any specific portions of the record. Doc. 10 at 6, 9.

Notably, in finding Dr. Elia's opinion to be unpersuasive, the only factor referenced by the ALJ was its consistency with the "medical records on a longitudinal basis." Tr. at 27. The ALJ did not address supportability or any other factor, nor did the ALJ acknowledge contrary findings. However, I do not find it necessary to further address this claim in light of my recommendation that this matter be remanded for further expert opinion regarding Plaintiff's ability to interact with co-workers on a consistent and sustained basis, and for further vocational testimony, if deemed necessary. See Butler v. Kijakazi, 587 F. Supp.3d 223, 231 (E.D. Pa. 2022) (citing Steininger v. Barnhart, Civ. No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. 2005) (not addressing additional argument because the ALJ's findings may be revised after a new hearing)). However, on remand the ALJ shall reconsider Dr. Elia's opinion.

## IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence because, in assessing Plaintiff's RFC, the ALJ failed to adequately explain how Plaintiff could occasionally interact with the public and supervisors while having no limitations interacting with co-workers. In light of this finding, I do not find it necessary to fully address Plaintiff's

claim that the ALJ provided insufficient rationale for rejecting Dr. Elia's opinion. On remand, the ALJ shall obtain additional expert opinion regarding Plaintiff's ability to interact with co-workers on a consistent and sustained basis, reconsider Dr. Elia's opinion in light of this additional evidence and, if necessary, obtain additional vocational testimony.

An appropriate Order follows.